[No. F007169. Fifth Dist. Sept. 9, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAN EVELYN HODGKIN, Defendant and Appellant.

798

**COUNSEL**

Glenn M. Kottcamp, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and W. Scott Thorpe, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

HAMLIN, Acting P. J.—

### STATEMENT OF THE CASE

Defendant was charged with violating Vehicle Code section 23153, subdivision (a), felony drunk driving causing injury or death to another person. She pleaded nolo contendere to the charge pursuant to a plea bargain that she would receive local time rather than a prison commitment. Defendant was sentenced to five years' probation, subject, inter alia, to conditions that she: (1) spend 365 days in jail, (2) pay a $500 fine to the court, (3) pay a $100 restitution fine pursuant to Government Code section 13967, (4) pay restitution to the victims of the accident in an amount to be determined by the probation officer up to and including $60,000, and (5) seek and maintain gainful employment. This appeal followed.

### STATEMENT OF FACTS

Since the instant case rests upon defendant's plea of nolo contendere, we take our facts from the probation report which, in turn, was taken from defendant's booking sheet and the police report. "[Defendant] was driving west on Highway 198 at an unknown rate of speed, when she crossed over the dividing line and collided head-on with a vehicle that was eastbound on Highway 198. After colliding with the vehicle, the defendant's car continued west and struck a tree subsequently catching fire.

"The defendant and her two children were transported to Kaweah Delta Hospital in Visalia for medical treatment. The victims in the other vehicle were transported to Sacred Heart Hospital in Hanford for medical treatment.

"California Highway Patrol Officer Lusk, contacted defendant Hodgkin at Kaweah Delta Hospital. While questioning her, he smelled a distinct odor of alcohol emitting from the defendant. Her speech was slow and slurred at times and she appeared to be disoriented. It was unsure if this was a result of the injuries caused in the accident or by alcohol. Field Sobriety Tests were not conducted due to the injuries sustained. Blood was drawn from the defendant to determine her blood/alcohol level while at the hospital. The results of that test were .08."

Defendant apparently suffered no serious injuries in the accident. Her two children were in the car with her; her son received minor injuries, and her daughter had exploratory surgery, because of internal bleeding, which

left a large scar on her abdomen. The passenger in the other car, Steve Facchini, suffered a laceration to the left side of his forehead and two broken ribs.

The most seriously injured victim was Jim Founier, driver of the other car. Founier's jaw was broken in two places, his spleen was so damaged it had to be removed, his left arm was broken, his left leg was fractured, and his left ankle was shattered. He developed a bad limp, he was having problems with his blood, he was suffering swollen lymph nodes in connection with the injured leg, and occasionally he suffered from terrible pain in the injured leg which required him to use crutches and prevented him from going to work.

At the time of defendant's sentencing, Founier's medical and surgical expenses exceeded $60,000, an amount about $2,000 more than his insurance limits. Founier had also lost his job, which had paid him $5 an hour; estimated lost wages approximated $12,000, less the $55 per week the victim was receiving from state disability. The probation report also reflects $337.70 for attorney fees "in excess of his one third fare [sic]." Although Founier's condition at the time of sentencing was described as good, more surgeries were anticipated.

## DISCUSSION

### I.

#### The Condition of Probation That Defendant Pay Restitution in an Amount up to $60,000

 Defendant first contends the condition imposed incident to her probation that she pay restitution to the victims in an amount to be determined by the probation officer but not to exceed $60,000 is unreasonable. Specifically the court ordered "that restitution be made to the probation officer in an amount and manner to be determined by the probation officer." Having ascertained that defendant had no insurance, the court defined the amount of restitution as "up to the amount of damage sustained by the victim, and that figure is so high that—but it should be—it says in excess of 60 thousand dollars." Once the deputy district attorney reminded the court that the victim, Founier, would probably undergo further surgery not covered by his insurance, the court went on to note, "With the key consideration being the coverage of any amounts incurred personally by—it would be—up to and including 60 thousand dollars, and with consideration being that any personal amounts or amounts out of pocket would be reimbursed first. In other words, that would be most important."

Penal Code section 1203.1[1] provides in pertinent part: "[¶] . . . [¶] The court shall consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund. . . [¶]. . ." Moreover, section 1203.04 provides: "(a) In every case where a person is convicted of a crime and is granted probation, the court shall require, as a condition of probation, that the person make restitution as follows:

"(1) To the victim, if the crime involved a victim. . . .

". . . . . . . . . . . . . . . . . . . .

"(b) If the court finds, and states its reasons for the finding on the record, that there are compelling and extraordinary reasons why restitution should not be required as provided in subdivision (a), the court shall require, as a condition of probation, that the person perform specified community service.

"(c) The court may avoid imposing the requirement of community service as a condition of probation only if it finds, and states its reasons for the finding on the record, that there are compelling and extraordinary reasons not to require community service in addition to its finding as to why restitution pursuant to subdivision (a) should not be required.

"(d) For purposes of paragraph (1) of subdivision (a), 'restitution' means full or partial payment for the value of stolen or damaged property, medical expenses, and wages or profits lost due to injury or to time spent as a witness or in assisting the police or prosecution, which losses were caused by the defendant as a result of committing the crime for which he or she was convicted. . . .

". . . . . . . . . . . . . . . . . . . . ."

■ In *People* v. *Richards* (1976) 17 Cal.3d 614 [131 Cal.Rptr. 537, 552 P.2d 97] the California Supreme Court considered the parameters of a trial court's sentencing discretion in granting probation to a convicted defendant subject to specified conditions. The court there stated: "Trial courts are granted broad discretion under Penal Code section 1203.1 to prescribe conditions of probation. [Citation.] However, a condition imposed must serve a purpose specified in the code section.

". . . . . . . . . . . . . . . . . . .

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

"The major goal of section 1203.1 is to rehabilitate the criminal. Restitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole." (*Id.* at pp. 619-620.) Moreover, "While the court does have broad discretion to impose probation conditions which foster rehabilitation and protect the public, this discretion must be exercised in a reasonable manner and is limited by certain constitutional safeguards. [Citations.] 'The discretion granted is not boundless. In the first place, the authority is wholly statutory; the statute [Pen. Code, § 1203.1] furnishes and limits the measure of authority which the court may thus exercise [citations].' [Citation.]

". . . . . . . . . . . . . . . .

" '[A] reasonable condition of probation is not only fit and appropriate to the end in view but it must be a *reasonable* means to that end. Reasonable means are moderate, not excessive, not extreme, not demanding too much, well-balanced. [Citations.]' [Citation.]" (*People* v. *Beach* (1983) 147 Cal.App.3d 612, 620-621, fn. omitted [195 Cal.Rptr. 381].)

The court in *In re White* (1979) 97 Cal.App.3d 141 [158 Cal.Rptr. 562] also noted that under section 1203.1 "a sentencing court has broad discretion to describe conditions of probation to foster rehabilitation and to protect the public to the end that justice may be done. [Citations.]" (*Id.* at p. 145.) The court went on to state: " 'The discretion granted is not boundless. In the first place, the authority is wholly statutory; the statute furnishes and limits the measure of authority which the court may thus exercise [citations]. [¶] Secondly, the discretion to impose conditions of probation as granted by Penal Code section 1203.1 is further circumscribed by constitutional safeguards. Human liberty is involved. A probationer has the right to enjoy a significant degree of privacy, or liberty, under the Fourth, Fifth and Fourteenth Amendments to the federal Constitution [citations].' [Citation.]

". . . 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]'

"There is an overall requirement of reasonableness in relation to the seriousness of the offense for which a defendant is convicted [citation]. '. . . The Constitution, the statute, all case law, demand and authorize only

"reasonable" conditions, not just conditions "reasonably related" to the crime committed.' [Citation.]

"Careful scrutiny of an unusual and severe probation condition is appropriate [citation].

"The fact that a defendant has the right to refuse probation does not preclude attack on an improper term of probation by appeal or application for a writ of habeas corpus. [Citations.] 'Where a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is *not* reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights.' [Citations.]" (*In re White, supra,* at pp. 145-146.)

 With these concerns in mind, we consider defendant's challenge of the trial court's order that she pay restitution to the victims in an amount not exceeding $60,000. Initially, in setting an outside limit on the amount of restitution defendant could be compelled to pay at the level of medical expenses incurred to the date of sentence but leaving the actual amount and manner of payment to the determination of the probation officer, subject only to a priority in repayment of the victims' out-of-pocket costs, the trial court here arguably ran afoul of this court's recent opinion in *People* v. *Cervantes* (1984) 154 Cal.App.3d 353 [201 Cal.Rptr. 187]. There, this court unequivocally rejected a trial court's delegation of its decision-making power in sentencing to the probation officer. (*Id.* at pp. 358-359; see also *People* v. *Hartley* (1984) 163 Cal.App.3d 126, 128 [209 Cal.Rptr. 131]; cf. *People* v. *Keele* (1986) 178 Cal.App.3d 701, 707 [224 Cal.Rptr. 32].) But defendant's failure to challenge the trial court's delegation to the probation officer of the power to fix the actual amount of restitution and to determine the method of payment according to defendant's ability to pay makes it unnecessary to decide that issue.

Defendant is the divorced mother of two young children; at the time of the sentencing hearing, defendant received no child support from the father of her children and had no income except welfare benefits (aid to families with dependent children [AFDC]) of $644 per month plus food stamps. Defendant had moved to Tulare County from the San Martin area two months prior to the accident to live with her former mother-in-law who had offered to help out financially. Apparently this arrangement did not work out, and defendant was returning to San Martin the night of the accident. As defendant points out on appeal, the 365 days in custody she must serve will effectively reduce to 52 months the period within which she can attempt to earn money to pay restitution ordered. This means that defendant would somehow have to increase her *net* income to an amount in excess of

$1,798 per month to make restitution payments of $1,154 per month ($60,000 divided by 52); still more would be needed to maintain herself and her children at a level equivalent to what they are now able to achieve with AFDC benefits and food stamps.

The probation report indicates defendant has a 10-year employment history from 1973 to 1983 as a clerical employee with National Semiconductors in Sunnyvale, California. Her employment stability, however, for the preceding five years is described as "poor." Nevertheless, at the sentencing hearing defendant indicated she had a job lined up that should have started the previous day which she would obviously not be able to undertake in light of her pending incarceration.

It is evident from the record that the trial court in no way considered *this* defendant's individual ability to pay restitution. Although restitution is an appropriate condition of probation and, when properly imposed, a valid tool to serve the rehabilitative purpose of the statute, restitution ordered as a condition of probation without regard to the defendant's possible ability to comply is a futile exercise. ■ As this court pointed out in *People* v. *Hartley, supra,* 163 Cal.App.3d 126, absent a judicial determination of the defendant's ability to pay restitution "taking into consideration defendant's apparently severely limited financial resources. . . . imposition of restitution as a condition of probation could well be no more than a meaningless act, subjecting defendant to a condition he had no hope of satisfying." (*Id.* at pp. 130-131.) In fact, an amendment to section 1203.2, subdivision (a), by Statutes of 1983, chapter 568, added the following language: "However, probation shall not be revoked for failure of a person to make restitution pursuant to Section 1203.04 as a condition of probation unless the court determines that the defendant has willfully failed to pay and has the ability to pay. *Restitution shall be consistent with a person's ability to pay.*" (Italics added.)

■ We are not persuaded by the People's argument that defendant's objections to the amount of restitution ordered are too speculative to constitute grounds for an appeal. First the People contend the actual amount of restitution, to be set by the probation department, was not yet definite since the victim's actual expenses were not yet final. But this ignores the statement in the probation report that the victim's medical expenses exceeded $60,000 at the time of sentencing; future expenses could only increase this amount. Thus it requires no speculation to conclude that defendant will be unable to pay $60,000 or anything approaching that amount in restitution. Granted the probation officer could determine the actual amount of restitution consistent with the statutory limitation of defendant's ability to pay, but since no reference was made in the probation report to this limitation,

we find no basis for presuming the probation officer will set restitution at a substantially lower dollar figure.

The People also contend defendant's current dependence on AFDC benefits does not mean she will be unable to earn more in the future. This is certainly true, but economic reality indicates it is unlikely almost to the point of impossibility that defendant, in light of her experience and background, will be able to obtain employment, at least lawful employment, that would result in net income of over $2,000 a month.[2] ■ ■ ■ ■ ■ We also find nothing speculative about defendant's contention that this amount cannot be repaid within the five-year probationary period.[3] The People's argument that defendant may seek modification of a condition which becomes onerous is accurate but unpersuasive when the condition itself is unreasonable in the first instance.

■ However, we reject defendant's argument that ordering restitution in this amount is a substitute for civil damages. By statute, the amount of restitution ordered to be paid to the victim of a criminal act may encompass full payment for medical expenses as well as lost wages. The probation report indicates Founier has incurred out-of-pocket medical expenses of approximately $1,600, with the balance of the $60,000 in medical expenses presumably being borne by his medical insurance company; Founier has also sustained lost wages of approximately $12,000. Although the basis for the amount of restitution ordered in this case is statutorily authorized, " '[r]estitution or reparation is not a substitute for a civil action to recover damages' [citation], and a defendant's duty of restitution cannot be predicated merely on a purported debt." (*People* v. *Richards, supra,* 17 Cal.3d at p. 621.) While a civil damage award is rendered without regard to the defendant's ability to pay, ability to pay is a factor that must figure into setting the amount of restitution and thus the injured party or parties may not be able to recover all of their damages through the restitutionary order. (See, e.g., *People* v. *Feno* (1984) 154 Cal.App.3d 719, 734-735 [201 Cal.Rptr. 513].)

[2] The $2,000 figure is much more realistic than the $1,798 figure mentioned above, which is the "bottom line" amount. Were defendant earning this much money, she would lose her food stamp entitlement which would result in additional food costs not now included in the $644 which covers, presumably, basic living expenses for defendant and her two children. Moreover, once defendant becomes employed, she will necessarily incur certain expenses which she does not now have, including transportation, clothing and, most importantly, child care.

[3] Defendant's contention that the impossibility of repayment within five years can result in extension and reextension of her probationary period is without merit. The five-year period of probation imposed on defendant is the maximum which the trial court could impose for felony drunk driving, which carries a possible prison term of sixteen months, two years, or three years. (§ 1203.1.) This period cannot be extended beyond the statutorily prescribed maximum even with the defendant's consent. (*People* v. *Gilchrist* (1982) 133 Cal.App.3d 38, 44 [183 Cal.Rptr. 709].)

 As evident from the trial court's remarks at sentencing, cited above, the court's primary concern was reimbursement of Founier's out-of-pocket expenses with reimbursement of the insurance company's loss secondary. While restitution to an insurance company for payments made to the victim of a criminal act is permissible (*People* v. *Calhoun* (1983) 145 Cal.App.3d 568, 572-573 [193 Cal.Rptr. 394]), given the apparent disparity between the victim's actual dollar loss in this case, whether medical expenses or lost wages, and the defendant's severely limited financial resources, the trial court would certainly be well within its discretion to direct restitution be made to Founier, the immediate victim of defendant's conduct, rather than his insurance company. The insurance company, of course, would retain its right to bring a civil subrogation action against defendant.

However, if a realistic assessment of defendant's ability to make payments in restitution, perhaps on a monthly basis, is made, even the $13,000 or so the victim is out of pocket is probably well beyond defendant's means. The trial court, which by its remarks at sentencing indicated a certain dissatisfaction with defendant's acceptance of responsibility for the seriousness of her conduct, is not without recourse. In adding a statutory limitation that restitution only be ordered consistent with the defendant's ability to pay, the Legislature added Penal Code section 1203.04 (p. 801, *ante*) which permits a trial court, upon a determination that there are extraordinary and compelling reasons why restitution should not be required, to impose as a condition of probation that the defendant perform specified community service. This provision reconciles the state's interest in rehabilitating a probationer by compelling the probationer to sacrifice his money or his time with the inability of an impoverished defendant to make monetary restitution.

Moreover, the trial court is required in every felony case to impose a "restitutionary fine" pursuant to Government Code section 13967; in this case the court imposed the minimum fine of $100. This amount is certainly reasonable in light of the extraordinary and excessive amount of restitution ordered as a condition of probation. Nevertheless, it is equally reasonable that a trial court, having determined a criminal defendant being granted probation lacks the financial means to make restitution directly to his victim, thus leaving the victim to turn to the restitution fund for relief, can order the defendant to pay into that fund a correspondingly greater restitutionary fine, up to the $10,000 maximum. Since by statute a restitutionary fine pursuant to Government Code section 13967 is imposed without regard to ability to pay (see *People* v. *Long* (1985) 164 Cal.App.3d 820 [210 Cal.Rptr. 745]), a trial court has another means at hand with which to

impress upon a defendant, for rehabilitative purposes, the seriousness of his or her conduct and the necessity that society be repaid.

The United States Supreme Court recently considered the propriety of incarcerating an indigent probationer who was unable to pay a fine imposed as a condition of probation. Interestingly, the availability of alternative means to accomplish the rehabilitative/punitive purpose underlying probation figured prominently in the court's decision: "We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." (*Bearden* v. *Georgia* (1983) 461 U.S. 660, 672-673 [76 L.Ed.2d 221, 233, 103 S.Ct. 2064].)

■ We therefore conclude that, under the circumstances of this case, a condition of probation that defendant pay restitution to the victim in an amount not to exceed $60,000, without regard to defendant's ability to pay and without anything in the record to suggest the trial court considered alternative means to serve the rehabilitative purpose of probation, was not a reasonable condition within the meaning of section 1203.1.

II.

*The Condition of Probation That Defendant Seek and Maintain Gainful Employment*

■ In addition to the restitution already discussed, the trial court imposed as a condition of probation that defendant seek and maintain gainful employment. Section 1203.1 specifically authorizes imposition of such a condition, i.e., "[i]n all cases of probation the court may require as a condition of probation that the probationer go to work and earn money for the support of his or her dependents or to pay any fine imposed or reparation condition, to keep an account of his or her earnings, to report them to

the probation officer and apply those earnings as directed by the court." Defendant contends such statutory authorization is unconstitutional, as is the condition of probation imposed on her, as violative of the proscription against involuntary servitude found in the Thirteenth Amendment to the United States Constitution.[4]

Defendant argues since the purpose of probation is rehabilitation, not punishment, she cannot be subjected to involuntary servitude. Relying upon California Rules of Court, rule 410, outlining general objectives in sentencing, including punishment, the People counter that a grant of probation is still subject to these general objectives and thus probation and conditions of probation punish an individual who has been convicted of a crime even as they serve to rehabilitate that individual.

An order that a criminal defendant seek and maintain gainful employment as a condition of probation is one commonly imposed. (See, e.g., *People* v. *Lewis* (1978) 77 Cal.App.3d 455, 463 [143 Cal.Rptr. 587, 3 A.L.R.4th 1185]; *People* v. *Buford* (1974) 42 Cal.App.3d 975, 984-986 [117 Cal.Rptr. 333].) Nonetheless, we have found no case that squarely considers a constitutional challenge to such a condition based on the Thirteenth Amendment. The court in *People* v. *Lewis, supra,* did comment generally on restrictions on constitutional rights by conditions of probation: " 'When granting probation, courts have broad discretion to impose restrictive conditions to foster rehabilitation and to protect public safety.' [Citation.] A condition to the granting of probation which compels a defendant to give up a fundamental or constitutional right is not in and of itself unconstitutional or invalid [citations], but such condition even though prohibiting conduct which is not only legal but protected by the Constitution, cannot stand if it is not related to the crime of which defendant has been convicted and if it has no reasonable relation to future criminality [citation]. . . . 'A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid.' [Citation.]" (*People* v. *Lewis, supra,* at p. 463; see also *People* v. *Beach, supra,* 147 Cal.App.3d at p. 622, "these fundamental constitutional rights are not absolute and may be reasonably restricted in the public interest. Constitutional intrusions have been upheld to the extent that they are required by legitimate governmental demands. [Citations.]")

 The simple answer to defendant's constitutional challenge is that had she considered the condition too harsh, she remained free to reject

---

[4] The Thirteenth Amendment to the United States Constitution provides, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

probation and accept the sentence. As the court pointed out in *People* v. *Mason* (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630], "If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. [Citations.] ▨ ▨▨ ▨ ▨ In such case he may challenge the legality of any proposed conditions of probation on an appeal from the judgment or on habeas corpus. [Citations.] . . .' "[5]

However, such a simple answer to defendant's contention here is not a particularly appealing one. For one thing, there is nothing in the record to indicate defendant actually objected to the imposition of this condition; in fact, she advised the trial court at the time of sentencing that she had found a job which would have commenced the day before the trial court sentenced her to a year in jail. Thus the record affirmatively suggests defendant not only had no objection to this condition but acquiesced in its imposition.

▨ However, even if this record failed to indicate such acquiescence on defendant's part, the statutory provision is not unconstitutional so long as the restriction on defendant's freedom, i.e., her "freedom" to be unemployed, is reasonably restricted in the public interest, i.e., the legitimate governmental concern for the rehabilitation of convicted criminals. In a somewhat analogous situation, an order that a defendant stay off welfare by getting and keeping a job as a condition of probation was upheld against challenges that it violated the due process clause of the Fourteenth Amendment, that it violated the defendant's equal protection rights, and that it unconstitutionally restricted the defendant's right to receive welfare benefits. (*Clark* v. *Prichard* (5th Cir. 1987) 812 F.2d 991.)

Since section 1203.1 limits the purposes for which a trial court can impose a condition of probation requiring the defendant seek and maintain gainful employment to purposes reasonably related to the state's interest in rehabilitating probationers, i.e., support of defendant or payment of fines and restitution, the statute as written is constitutional. But that determination does not necessarily justify the trial court in imposing on defendant the obligation to seek and maintain gainful employment without regard to her particular circumstances.

▨ Just as we discussed above with respect to the amount of restitution, defendant appears from this record to be a very good candidate for probation, notwithstanding the trial court's apparent dissatisfaction with

---

[5] Just as a defendant can reject probation, accept a prison sentence, and challenge a proposed condition of probation on appeal or by writ, "[i]t is not necessary for a defendant to reject probation as a prerequisite to challenging the validity of a condition of probation. (*In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727] [. . .].)" (*People* v. *Keele, supra,* 178 Cal.App.3d at p. 708.)

her expressions of remorse and her acceptance of responsibility. Defendant's only prior record consisted of a conviction based on a guilty plea to petty theft in 1976, when defendant was eighteen years old, and two traffic violations, one in 1984 for failure to appear and a second in 1985 for speeding. Defendant was apparently the sole support of her two minor children and, since the accident, had been attending counseling with her children.

Moreover, notwithstanding the very serious nature of the injuries suffered by Jim Founier, a factor which weighed heavily in the court's determination, defendant's blood alcohol level shortly after the accident was 0.08 percent. This is below the 0.10 percent level at which there is a legal presumption of impairment (Veh. Code, § 23152, subd. (b)), but defendant acknowledged she should not have been driving her car. Defendant told the probation officer that she had fallen asleep behind the wheel and consequently drifted over the center line prior to the collision. Thus the physical evidence, i.e., defendant's blood alcohol level, is not inconsistent with her claim of falling asleep. The probation department found defendant a suitable candidate for probation but to encourage acceptance of responsibility for her conduct recommended imposition of a 180- to 240-day local commitment.

Faced with an apparently suitable candidate for probation, as well as a demonstrated need to support dependents or to pay fines and restitution, a trial court must nevertheless give some consideration to the feasibility of a defendant finding and maintaining gainful employment. Certainly there is no obvious burden in simply ordering a defendant to *seek* such employment, but seeking and maintaining are two different things. Interestingly enough, when the subject of a work furlough program was broached to the trial court in the instant case, it indicated unwillingness to authorize defendant's participation in such a program if she would only be making enough money to meet living expenses but would approve participation if her income was great enough to start making restitution to the victims. Since "gainful" is defined as "producing gain; profitable" (Webster's New World Dict. (2d College ed. 1982) p. 570), were the trial court to follow through with this line of reasoning, employment for defendant would not be "gainful" until her net earnings were projected to exceed $2,000 per month. Since it is extremely doubtful defendant's background and experience would qualify her for jobs in that salary range, even her "seeking" might be curtailed almost to the point of nonexistence, a result the trial court did not intend.

Moreover, a trial court must take into consideration individual circumstances that might make employment less profitable for the probationer, most obviously in this case defendant's sole support of her two minor children. When dealing with a defendant who is receiving AFDC, the social

welfare department has already placed such an individual into a work preparation program or made a determination that he or she is exempt from such requirement. (Welf. & Inst. Code, § 11310, subd. (b)(6) ["A parent with primary responsibility for the care of a child under the age of six or other relative who is caring for such child if the parent or adult relative is providing care with only brief or infrequent absences from the child."].) ▓▓▓ Obviously, a determination by the social services department that an individual is exempt from a work incentive program despite continuing receipt of AFDC benefits is not binding upon a trial court facing that same individual in the criminal sentencing context. Nevertheless, an individual's family obligations, past experience and future prospects should be considered, as well as any other particularized factors on a case-by-case basis, in deciding whether to impose as a condition of probation an obligation that the defendant seek and maintain gainful employment.

▓▓▓ Again, it is true that inability to comply with such a condition may be somewhat speculative at the time it is imposed. This is certainly not a case in which this court can say as a matter of law compliance would be impossible, particularly in light of defendant's apparent acquiescence in the condition as reflected in her announced job prospect at the time of sentencing. Nevertheless, such a particularized inquiry is necessary to guarantee for this court a record by which it can establish the *reasonableness* of a condition imposed incident to granting probation. On remand the trial court should undertake an inquiry to assure itself and to ensure the record reflects that an order to seek and maintain gainful employment is a *reasonable* condition of probation.

The judgment in the instant case is affirmed. The matter is remanded to the trial court for reconsideration of the conditions of probation in accordance with this opinion.

Ballantyne, J., and Reid, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.