Filed 1/29/14  P. v. Tobey CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID TOBEY,<br><br>    Defendant and Appellant. | A134882<br><br>(Solano County<br>Super. Ct. No. VCR209863) |

### INTRODUCTION

Defendant David Tobey appeals from his conviction, following jury trial, of cutting a utility line (Pen. Code, § 591)[1] and felony vandalism (§ 594, subd. (a)).  The court placed defendant on formal probation subject to various terms and conditions, including that he "seek and maintain full-time gainful employment and/or vocational training or a combination of those."  He contends the felony vandalism conviction must be reversed because there is no evidence he caused $400 or more of damage.  He also contends the employment/training probation condition is unreasonable under the circumstances.  We affirm both the conviction and probation condition.

### FACTUAL AND  PROCEDURAL BACKGROUND

In December 2010, California Highway Patrol Officer William Gerstmar was on routine patrol with his partner in the Vallejo/Benicia area.  The officers made two "sweeps" along highways 680 and 780 in Benicia at about 7:30 p.m. and 9:30 p.m., and

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

did not notice anything unusual about the freeway lights. On a third sweep, at 2:16 a.m., the officers passed a pickup truck stopped on the shoulder of highway 780 with a person standing near its front bumper. They also noticed the freeway lights in the area were no longer working. The officers turned their patrol car around and headed toward the truck to make contact with the person they had seen. They pulled in and stopped behind the truck and then found defendant lying face down in the mud with his hands underneath him. A flashlight lay on the ground nearby, and about two feet away was an open utility box with cut wires. Gerstmar heard movement in a nearby bush. Meanwhile, he yelled at defendant to show his hands. Defendant did not comply, and showed his hands only after the officers drew their weapons and repeated the command.

When Gerstmar asked what defendant was doing in the area, he replied he had run out of gas. Gerstmar patted him down, and discovered a pair of wire cutters and a screwdriver. Upon examining the nearby utility box, Gerstmar observed two wires in the box had been cut, and he found "two or three, five to six-inch segments of wire matching the wire that was in the box laying outside the box . . . within arm's reach of where [defendant] was laying." On the window of the truck, a note read "[o]ut of gas, be back soon." The note was written on the back of a copper recycling receipt from about two weeks prior made out to someone other than defendant.

The officers placed defendant in the back of the patrol car and asked him "who was out there[?]" Defendant initially replied "no one," but eventually admitted "his partner was out there." Despite searching with additional officers and a canine unit, the officers did not find anyone else. The officers then examined other nearby utility boxes within 300 yards. They found "nine other boxes" with opened lids, and Gerstmar believed "seven of the boxes had wires severed." Although he did not contact Caltrans to check what specific tools were necessary to open the boxes, Gerstmar opined, based on his "daily experience," a screwdriver would suffice.

The Solano County District Attorney filed an information in March 2011, charging defendant with felony cutting of a utility line (§ 591), felony vandalism over $400 (§ 594, subd. (a)), and misdemeanor possession of burglar tools (§ 466). Before trial, defendant

filed a motion to dismiss under section 995 claiming, inter alia, there was insufficient evidence to prove actual damages over $400, a requirement of felony vandalism. The trial court denied the motion. Defendant also filed a motion in limine to exclude evidence the officers "located nine electrical utility boxes" with removed lids or tampered-with wires, claiming there was nothing linking defendant to the other boxes. The trial court also denied this motion.

At trial, Caltrans electrical supervisor Roberto Magalog, who as part of his job estimates damages to equipment, estimated the cost to repair the nine damaged or tampered boxes and lights in the area at $3,500. The replacement cost for the copper wire was at least $500, the cost of a vehicle around $500, and the labor costs at least $1,000, using conservative estimates. Magalog also explained if one wire is cut, it can sometimes affect more than one light, increasing the repair costs. He stated his workers could not "fix just one box and get the lights to come back on." The jury returned guilty verdicts for the felony charges of cutting a utility line and vandalism.

DISCUSSION

*Sufficiency of the Evidence*

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'This standard applies whether direct or circumstantial evidence is involved.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

Defendant concedes circumstantial evidence linked him to the damaged utility box next to where he was found, but argues no substantial evidence links him to the other

damaged boxes, and without that link, the jury's finding he caused over $400 worth of damage was unfounded. We disagree.

During Officer Gerstmar's prior "sweeps" of the particular section of Highway 780 just hours earlier, the freeway lights had been operational. The opened or tampered with boxes near where defendant was found were "along the route of [light] poles" and within 300 yards of the box where he was found. Defendant was in possession of not only a pair of wire cutters, but also a screwdriver, which Gerstmar testified could open the lids of the boxes. A flashlight was found near defendant, and "two or three" pieces of wire were within his arm's reach. Although a search of defendant and his truck revealed no additional wire, defendant admitted he had been working with a partner, who was not found. The jury could have concluded the partner escaped with any additional wire the two had procured from the string of damaged boxes. In addition, the out-of-gas note was written on the back of a copper recycling receipt from about two weeks prior and made out to another individual—more evidence of a collusive and significant effort to obtain and sell copper materials. The jury could well have determined defendant, either himself or in conjunction with his partner, damaged the entire string of utility boxes and stole all the missing wire. Further, Magalog testified his Caltrans team could not "fix just one box and get the lights to come back on." In fact, the cost of getting a vehicle out to the area for repairs, alone, was $500. Thus, the jury could also rationally have concluded even damage to one box resulted in repair costs exceeding $400.

In sum, substantial evidence supports the jury's verdict that defendant committed felony vandalism.

*Probation Condition*

Defendant also challenges, for the first time on appeal, the trial court's order that he "seek and maintain full-time gainful employment and/or vocational training or a combination of those" as a condition of his probation. Defendant claims the court did not assess whether he could feasibly comply with the condition.

To challenge the reasonableness of a probation condition on appeal, a defendant must first raise the issue in the trial court. (*People v. Welch* (1993) 5 Cal.4th 228, 237; *In*

4

*re Sheena K.* (2007) 40 Cal.4th 875, 882; see also *People v. Kim* (2011) 193 Cal.App.4th 836, 841 [ruling defendant's challenge to the reasonableness of a probation condition that he seek and maintain employment was forfeited by his failure to question it in the trial court].)  Defendant concedes he did not object to the employment/training condition of his probation at sentencing, but contends his counsel's failure to object was ineffective assistance.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688.)  "Second, the defendant must show that the deficient performance prejudiced the defense." (*Id.* at p. 686.)  "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  (*Id.* at p. 697.)  Ineffective assistance claims based upon the failure to object "are routinely denied on the bases that the unasserted objection was nonmeritorious and would have been overruled."  (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1131.)

Thus, although defendant forfeited his challenge to the probation condition by failing to object, we consider its substance in order to dispose of the ineffective assistance argument.  (See *People v. Coffman* (2004) 34 Cal.4th 1, 82 ["Because, however, he asserts counsel rendered ineffective assistance in failing to preserve the point, we address its substance."]; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1140 ["Accordingly, defendant's alternative claim that counsel rendered ineffective assistance in failing to object must be rejected; counsel undoubtedly realized an objection would have been unavailing."]; *People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [failure to object to unobjectionable material not ineffective assistance].)

"An order that a criminal defendant seek and maintain gainful employment as a condition of probation is one commonly imposed." (*People v. Hodgkin* (1987) 194 Cal.App.3d 795, 808; see also § 1203.1 [allowing court to require "the probationer

go to work and earn money" in certain circumstances]; *People v. Kim*, *supra*, 193 Cal.App.4th at p. 841 [reasonable employment conditions would be permissible].)

Due to defendant's nonviolent history, the trial court concluded he was suitable for probation. Defendant was employed when he was sentenced, and defense counsel informed the court of this. Defense counsel also advised that defendant was supporting a child at home. Thus, the court was aware that defendant was employable, that he had to support a dependent and that he had to pay restitution to Caltrans. Accordingly, the court was adequately apprised of the relevant considerations and acted reasonably in imposing this standard condition of probation. We likewise discern no reason for defense counsel to have made an objection to the condition. Nor is there any indication on this record that had counsel done so the condition would not have been imposed. Thus, defendant has shown no legitimate basis for an objection, nor prejudice from the absence of an objection. Accordingly, he cannot salvage his forfeited objection to the probation condition by styling it as a claim of ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.

6