Filed 5/19/21  P. v. Hemstalk CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C090797 |
| Plaintiff and Respondent, | (Super. Ct. No. 16CM01409) |
| v. | |
| JARED MICHAEL HEMSTALK, | |
| Defendant and Appellant. | |

A jury found defendant Jared Michael Hemstalk guilty of inflicting a corporal injury on a spouse or cohabitant, reporting a false crime, and two counts of disobeying a domestic relations court order.  The trial court placed defendant on formal probation for three years.

Defendant now contends on appeal that several probation conditions are unreasonable and that others are both unreasonable and unconstitutional.  To the extent his challenges have been forfeited by the absence of a timely objection, he argues he received ineffective assistance of counsel.

1

We conclude defendant forfeited his reasonableness challenges by failing to object below and that he has failed to carry his heavy burden of establishing his counsel was ineffective. We also reject his constitutional challenges, although we remand for clarification of a sentence fragment in one of the conditions. In all other respects, we shall affirm the judgment.

## I. BACKGROUND

Defendant and Heather, who share a daughter, were involved in a tumultuous relationship from 2014 to 2017. On April 14, 2016, they left a bar after drinking and each drove their own cars to Oroville. At some point, defendant pulled over on the side of the road, and Heather parked her car behind his, got out, and walked to defendant's truck. As she approached, defendant drove off, running over Heather's toe.

Heather got back in her car and drove to defendant's house. When she called him to tell him he had run over her foot, she learned defendant had gone to a second bar. Frustrated, Heather entered the home and broke several glasses, removed her things from the dresser, and left defendant's house in disarray. Heather drove to the second bar but was unable to locate defendant.

Heather returned to defendant's house; he was home and appeared intoxicated. Defendant questioned whether Heather had vandalized his house, and she admitted that she had. Heather attempted to return to her car to leave, but defendant kept pulling her out of her car. Defendant bashed her head into the front of her car several times, causing her nose to bleed. Heather tried to escape across the street, but she fell on the gravel and defendant kicked her several times.

Heather ran for help to the second bar where her friend, C.B., worked. C.B. saw that Heather's face was swollen, she had blood in her hair, and she was crying. Heather said defendant had "beat the shit out of her." Heather then went home where she took a shower and cleaned herself up. Although C.B. said Heather told her defendant had

2

pistol-whipped her, at trial Heather did not recall ever telling C.B. that defendant had hit her with a gun.

That same day, Hemstalk reported to police that someone had entered and vandalized his home. Deputy Jessica Raggio responded to the scene and noticed defendant appeared to be under the influence of alcohol. Raggio found broken glass and knocked over chairs inside, but no logical point of forced entry into the home. Raggio also observed defendant's car and Heather's car out front, each with blood on them. She was aware of previous domestic violence incidents between defendant and Heather, although defendant claimed Heather was just his friend whom he had not seen lately. Raggio confiscated a firearm from the house, which had a red substance on it that appeared to be blood. A subsequent DNA analysis confirmed that the substance was blood and that it matched a DNA sample from Heather but not from defendant.

Later that day, Deputy Raggio contacted Heather. She observed a large bruise on Heather's arm and blood on her nose.[1] Heather was not cooperative and appeared intoxicated. She told Raggio that she never saw defendant with a weapon.

Defendant was arrested, and an order protecting Heather from defendant was issued in June 2016. Several months later, in August 2016, Deputy Raggio responded to Heather's work regarding defendant violating the restraining order. Defendant claimed he did not know he was not allowed to be near her work. On another occasion in August 2016, officers responded to a domestic violence incident where defendant threw Heather out of his house by her hair. The following month, in September 2016, Raggio investigated another domestic violence incident between defendant and Heather in which Heather sustained multiple injuries.

---

[1] Heather testified that the bruise on her arm was from a previous incident that occurred about a week prior to the April 14 incident, "as a result of" defendant.

3

In September 2018, defendant was charged with inflicting a corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)—count 1),[2] making a false report of a criminal offense (§ 148.5, subd. (a)—count 2), and two counts of disobeying a domestic relations court order (§ 273.6, subd. (a)—counts 3 and 4). As to count 1, it was alleged that defendant personally used a firearm (§ 12022.5, subd. (a)).

Deputy Raggio, Heather, and C.B. testified to the above facts at trial. Defendant testified on his own behalf. According to him, on April 14, 2016, he and Heather were at a bar. After he cut her off from drinking, she got upset and stormed out. Later that evening, Heather damaged his house. He called police to report the vandalism. As he waited for an officer to respond, he took a shower. Defendant heard banging on his window; he saw Heather outside and told her he had called law enforcement and that she should leave. She did. Defendant saw Heather run out of his driveway and he heard her fall across the street, but he testified that he did not follow her.

When Deputy Raggio arrived, defendant showed her where his gun was located under his mattress. Although he normally kept the gun near the head of the bed, Raggio located the gun at the foot of the bed; defendant denied handling the gun before Raggio's arrival. He testified that he knew who vandalized his house even though he did not tell Raggio that he believed it was Heather. Defendant also admitted that he knew there was a restraining order in place when he had contact with Heather on two occasions in August 2016. He described being attacked by Heather during an incident in December 2016 and claimed he did not hurt her but merely deflected her blows.

Defendant denied ever hitting or kicking Heather on April 14, 2016, or slamming her head into the car. He also denied hitting her with his gun. And, according to

---

[2] Further undesignated statutory references are to the Penal Code.

defendant, Heather told him she threw a log against his window on April 14 that ricocheted backwards and hit her in the face.

A jury found defendant guilty on all counts, but found the firearm enhancement not true. The court suspended imposition of sentence and placed defendant on three years formal probation with various terms and conditions. During the sentencing hearing, defense counsel asked the court to modify proposed special probation condition Nos. 1 and 14, and noted that for condition No. 57 he could provide proof that he was presently employed at the time of sentencing. Defendant did not object to any of the remaining probationary terms and conditions. Defendant timely appealed.

## II. DISCUSSION

### A. General Probation Principles

A trial court has broad discretion to impose reasonable conditions of probation in order to promote the rehabilitation of the probationer and to protect public safety. (§ 1203.1, subd. (j); *People v. Olguin* (2008) 45 Cal.4th 375, 379 [" 'The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions' "].) Probation conditions that regulate noncriminal conduct must be reasonably related to the crime for which the defendant was convicted or to future criminality. (*People v. Welch* (1993) 5 Cal.4th 228, 233-234 (*Welch*).) Therefore, a condition of probation is generally "invalid [only if] it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).) "The *Lent* test 'is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118.)

"Judicial discretion to set conditions of probation is further circumscribed by constitutional considerations." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1356.) A probation condition that imposes limits on a person's constitutional rights must closely

5

tailor those limitations to the purpose of the conditions, and it must be sufficiently precise, in order to avoid being invalidated as unconstitutionally overbroad or vague. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)

We review a trial court's decision to impose particular terms or conditions of probation for abuse of discretion. (*People v. Moran* (2016) 1 Cal.5th 398, 403; *Welch, supra*, 5 Cal.4th at p. 234.) A trial court does not abuse its discretion unless its determination is arbitrary or capricious or " ' "exceeds the bounds of reason, all of the circumstances being considered." ' " (*Welch, supra*, at p. 234.) Constitutional challenges, such as a claim that a condition is vague or overbroad, are reviewed de novo. (*People v. Stapleton* (2017) 9 Cal.App.5th 989, 993.)

B.       *Reasonableness Challenges*

Defendant challenges several conditions of probation that he contends are unreasonable. He argues the probation conditions directing him to seek and maintain lawful employment (general condition No. 11), not to annoy, harass, or harm Heather (special condition No. 14), not to associate with anyone unlawfully using or selling controlled substances (special condition No. 4), to cooperate in psychiatric or psychological testing or counseling (general condition No. 9), to successfully participate in educational course work or vocational training (general condition No. 10), and to refrain from recreationally using or possessing marijuana, cannabis, or CBD oil (special condition No. 67) are unreasonable because none of the conditions relate to the crimes for which he was convicted, the conduct to which the conditions relate are not, in themselves, criminal, and the conditions are not related to future criminality. Defendant, however, did not object on reasonableness grounds below.

The People argue that defendant has forfeited his reasonableness challenges by failing to assert a timely objection below. We agree.

"Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on

appeal." (*In re Sheena K., supra*, 40 Cal.4th at p. 880.) Indeed, " ' "[n]o procedural principle is more familiar . . . than that a constitutional right," or a right of any sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " (*Ibid.*; see *People v. Trujillo* (2015) 60 Cal.4th 850, 856 (*Trujillo*).) In order to raise a purported error on appeal, a defendant, with limited exceptions, must preserve the claimed error by contemporaneous objection in the trial court. (*Trujillo, supra*, at p. 856.)

When a defendant fails to object in the trial court on the ground that a probation condition is unreasonable under *Lent, supra*, 15 Cal.3d 481, 486, he cannot raise the issue on appeal. (*Welch, supra,* 5 Cal.4th at pp. 234-238; *In re P.O.* (2016) 246 Cal.App.4th 288, 294 ["The failure to object that a probation condition is unreasonable under *Lent* . . . generally forfeits the contention on appeal"].)

While we recognize that a claim that a probation condition is facially vague or overbroad, which can be corrected without reference to the particular sentencing record developed in the trial court, is not forfeited if a defendant fails to object on that basis below (*In re Sheena K., supra*, 40 Cal.4th at pp. 887-888 [probation condition prohibiting the defendant from associating with "anyone disapproved of by probation" was vague and overbroad despite lack of objection in the trial court]), defendant's reasonableness challenges do not fall within that narrow exception. Nor are we persuaded that the trial court lacked statutory authority to impose the conditions because, in defendant's view, the court could only impose reasonable conditions under the statutory scheme thus making the conditions unauthorized sentences that can be corrected any time despite the absence of a timely objection. If that were the rule, no reasonableness challenge could ever be forfeited.

Similarly, defendant's claim that his reasonableness challenges raise only pure questions of law is without merit. Defendant himself argues the conditions are improper given his personal employment history and current economic climate, his coparenting

7

relationship with the victim, his participation in other counseling programs, his success or failure at school, and his long term construction job which has caused legitimate injuries that he must treat with CBD oil or other marijuana products. These concerns highlight the personal, factual nature of defendant's reasonableness challenges which do not present pure questions of law.

Because defendant did not object at sentencing that the challenged conditions were unreasonable, he cannot belatedly raise such claims here. Defendant has forfeited his reasonableness challenges.

## C.    Constitutional Challenges

Defendant contends special condition Nos. 14 and 67 unconstitutionally infringe on his freedom of association, expression, and due process. Although defendant did not raise any such objection below, we nevertheless address his constitutional claims. (*In re Sheena K., supra*, 40 Cal.4th at p. 879 [minor's constitutional challenge to her probation condition as vague and overbroad not forfeited despite her failure to object on those grounds when condition imposed by juvenile court].)

"It is an essential component of due process that individuals be given fair notice of those acts which may lead to a loss of liberty. [Citation.] This is true whether the loss of liberty arises from a criminal conviction or the revocation of probation." (*In re Robert M.* (1985) 163 Cal.App.3d 812, 816.) To constitute fair notice, a violation need only be described with a reasonable degree of certainty such that ordinary persons can understand what conduct is prohibited. (*Ibid.*)

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*In re Sheena K., supra*, 40 Cal.4th at p. 890.) A probation condition that limits a person's constitutional rights, moreover, must be closely tailored to the condition's purpose to avoid being invalidated as unconstitutionally overboard. (*Ibid.*)

8

In this case, special condition No. 14 provides: "Do not in any way, personally or through any third party, annoy, harass or harm: Heather [].  Comply with [section] 136.2 order."  Defendant objects to the word "annoy" in the condition, which he characterizes as colloquial and meaning merely making someone a little angry.  Because he must deal with Heather while co-parenting their daughter, defendant argues he will likely "annoy" her at some point.  According to defendant, banning "annoyance, as opposed to something criminal, like harassment, was unreasonable and arbitrary, and unjustly infringed on [his] freedoms of association and expression and due process."

We find no constitutional infirmity.  The term "annoy," given the domestic violence context in which it is used, is " 'sufficiently certain to inform persons of ordinary intelligence of the nature of the offense [or conduct] which is prohibited.' " (*People v. Ewing* (1999) 76 Cal.App.4th 199, 208.)  "Annoy" has a "clear and understandable dictionary definition." (*Id.* at p. 207.)  It means " 'to irritate with a nettling or exasperating effect.' " (*Ibid.*, citing Webster's New Internat. Dict. (3d ed. 1993) p. 87.)  In light of the condition's specific reference to the domestic violence protective order, a person of ordinary intelligence would understand that the condition prohibits defendant from annoying conduct that violates the protective order or otherwise constitutes domestic violence.

We also note that the term "harassment," which defendant cites as a more reasonable prohibition rather than annoyance, has been defined in the Penal Code as follows:  " 'harasses' means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, *annoys*, torments, or terrorizes the person, and that serves no legitimate purpose." (§ 646.9, subd. (e) [stalking statute].)  Thus, the concept of "annoy" is statutorily included within harassment.

Defendant next argues that special condition No. 4 is vague because it lacks a knowledge component for associating with anyone unlawfully using or selling controlled substances.  Special condition No. 4 states:  "Totally refrain from the use, control, or

9

possession of any controlled substance unless with a current prescription from a licensed physician. Do not possess any narcotic paraphernalia nor knowingly associate with anyone who has ever been convicted of any criminal offense involving these substances, nor anyone unlawfully using or selling controlled substances, without permission of the Court or probation officer. Without a valid recommendation."

We disagree with defendant's interpretation of the condition. The sentence at issue expressly states that defendant shall not *knowingly* "associate with anyone who has ever been convicted of any criminal offense involving these substances, nor anyone unlawfully using or selling controlled substances." The adverb "knowingly" modifies both clauses that follow—the first clause related to associating with individuals convicted of narcotics offenses and the second clause related to associating with anyone unlawfully using or selling controlled substances.

In any event, as we held in *People v. Patel* (2011) 196 Cal.App.4th 956: "We construe every probation condition proscribing a probationer's presence, possession, association, or similar action to require the action be undertaken knowingly. It will no longer be necessary to seek a modification of a probation order that fails to expressly include such a scienter requirement." (*Id.* at pp. 960-961; but see *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1351-1352 [declining to follow *Patel* and choosing to modify probation conditions on a case-by-case basis to make knowledge requirement explicit]; *People v. Moses* (2011) 199 Cal.App.4th 374, 381 [same].)

To the extent defendant contends that the sentence fragment, "[w]ithout a valid recommendation," makes no sense given its random placement at the end of the condition, we agree. Accordingly, we will remand with directions for the trial court to clarify the meaning of the phrase as used in special condition No. 4.

D. *Ineffective Assistance of Counsel*

In an effort to avoid the forfeiture rule, defendant argues that his counsel was ineffective by failing to object to the probation conditions. In defendant's view, there

was no conceivable tactical reason not to object since he allegedly was subject to violation for taking legal actions or experiencing certain misfortunes like losing his job, failing an educational program, or annoying Heather.

To establish ineffective assistance of counsel, defendant must show that his counsel's representation fell below the standard of a competent advocate and a reasonable probability exists that, but for counsel's errors, the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) "The likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011) 562 U.S. 86, 112.)  Surmounting *Strickland*'s high bar is thus never an easy task.  (*Id.* at p. 105 [*Strickland*'s high bar must be applied with scrupulous care since ineffective assistance claims can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial].)

A claim for ineffective assistance of counsel will be sustained "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission."  (*People v. Fosselman* (1983) 33 Cal.3d 572, 581.)  "An attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffective assistance of counsel."  (*People v. Kelly* (1992) 1 Cal.4th 495, 540.)

Here, three of the challenged conditions—general condition Nos. 9, 10, and 11— were defined as part of the standard conditions of probation, evidently imposed upon probationers as a matter of routine.[3]  Trial counsel could have reasonably decided not to

---

[3] The People mistakenly argue that defendant challenges special condition No. 57, which provides:  "Unless participating in a job training program, working full[ ]time earning income, are incarcerated or in court ordered residential treatment, you are to perform a job search and submit proof of at least [15] job searches each week to your probation officer or to the Court as directed."  Defendant's briefing makes clear that he is

11

object to a standard condition of probation out of a belief that defendant was fortunate not to be sentenced to the upper term, as the arresting officer recommended to the court. Trial counsel could have rationally decided that it was in defendant's best interest not to quibble over standard conditions of probation.

Indeed, as the People point out, the Legislature has expressly authorized probation conditions requiring a probationer to seek and maintain gainful employment like general condition No. 11, which provides: "If directed to do so by the probation officer, actively seek and maintain lawful employment and earn money for the support of yourself and your dependents per [section] 1203.1[, subdivision ](d). You must keep the probation officer informed of the exact name and address of your employment." The condition tracks the language in section 1203.1, subdivision (d), which states: "In all cases of probation the court may require as a condition of probation that the probationer go to work and earn money for the support of [his or her] dependents or to pay any fine imposed." Other courts have found similar conditions reasonable. (See e.g., *People v. Sanchez* (2019) 38 Cal.App.5th 907, 919 [probation condition directing the defendant to seek and maintain schooling or employment valid; although the defendant's ability to maintain such training or employment could result in non-compliance due to circumstances beyond her control, such non-compliance could not give rise to a violation without a showing of willfulness]; *People v. Hodgkin* (1987) 194 Cal.App.3d 795, 808 ["[a]n order that a criminal defendant seek and maintain gainful employment as a condition of probation is one commonly imposed"].)

The same holds true for general condition Nos. 9 and 10, which respectively provide: "[y]ou must cooperate in any psychiatric or psychological testing or counseling which may be suggested by the probation officer," and "[i]f directed to do so by the

---

challenging general condition No. 11 as it relates to seeking and maintaining lawful employment and earning money to support himself and his dependents.

probation officer, successfully participate in educational course work and/or vocational training." The Legislature has expressly sanctioned probation conditions requiring a probationer's participation in counseling and vocational or educational training. (See e.g., § 1203.1, subd. (i)(1) [upon conviction for child abuse or neglect, trial court may require probationer to participate in counseling or education programs, or both]; § 1203.1 subd. (j) [the trial court may impose any and all of above-mentioned conditions, including participating in counseling and educational programs, as it deems fitting and proper to the end that justice may be done]; § 1210.1 [upon conviction for nonviolent drug possession offense the trial court may impose, as a condition of probation, participation in vocational training, family counseling, literacy training and/or community service].) And probation conditions requiring a probationer to remain in school and "maintain satisfactory grades" have been upheld as valid. (See e.g., *In re Angel J.* (1992) 9 Cal.App.4th 1096, 1100-1101.)

We can also perceive of valid reasons for choosing not to object to the special conditions. The condition prohibiting defendant from annoying, harassing, or harming Heather (special condition No. 14) contains language similar to a condition upheld in *People v. Jungers* (2005) 127 Cal.App.4th 698, 701, 703-705 [condition that probationer in domestic violence case not to annoy, harass, or threaten victim but which allowed the victim to initiate contact with defendant reasonable and not unconstitutional]. And, as previously explained, neither condition No. 14 nor condition No. 4 (associating with narcotics users) were unconstitutionally vague, so counsel may have reasonably decided to withhold an objection. (*People v. Boyette* (2002) 29 Cal.4th 381, 436 [defense counsel cannot be considered ineffective for failing to make a groundless objection].)

As for special condition No. 67, which states that defendant shall "[t]otally refrain from the recreational use or possession of marijuana/cannabis, and not knowingly enter any place of business or location where marijuana/cannabis is the primary item for sale or use. Do not ingest or use any item containing marijuana/cannabis/CBD oil/hemp,"

counsel reasonably could have concluded, as the People argue, that the condition prohibited the recreational use of marijuana, cannabis, and CBD oil, but that using such products when prescribed by a licensed physician was still permitted under special condition No. 4.

On this record, we cannot say counsel was ineffective for failing to object to the probation conditions defendant now challenges on appeal. We thus reject defendant's ineffective assistance of counsel claim.

## III. DISPOSITION

We direct the trial court to clarify the meaning of the sentence fragment "Without a valid recommendation" in special condition No. 4. In all other respects, the judgment is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
MAURO, Acting P. J.

/S/

_____
KRAUSE, J.

14