Filed 12/30/24  P. v. Rieder CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JESSE JOHN RIEDER,<br><br>  Defendant and Appellant. | A166121<br><br>(Marin County<br>Super. Ct. No. SC208009A) |

A jury convicted Jesse John Rieder of sexual penetration by a foreign object of an unconscious person, as well as misdemeanor assault and battery.  Rieder contends that his convictions must be overturned due to prosecutorial misconduct or, alternatively, ineffective assistance of counsel.  Finding no prosecutorial misconduct, we affirm the judgment.

## BACKGROUND

The information alleged that Rieder committed oral copulation of an unconscious person (§ 287, subd. (f)(1), count one) and sexual penetration by a foreign object of an unconscious person (§ 289, subd. (d), count two).

1

At trial, victim Jane Doe testified that she and her boyfriend attended a birthday party at a house in Marin for her boyfriend's friend on the night of February 17, 2019.[1]  Jane Doe did not know the people at the party well, and she had never met Rieder, who was also at the party.  Jane Doe's boyfriend left sometime after midnight, but Jane Doe had wanted to stay longer to check on one of the female attendees who seemed upset earlier in the evening.  Jane Doe's boyfriend left her and did not answer her calls thereafter.  At around 3:00 a.m., Jane Doe fell asleep, clothed, on a futon, with another couple sleeping on a blowup mattress nearby.  She awoke without pants as Rieder touched her vagina and then her anus.  She saw a bottle on the table nearby, grabbed it, yelled, and hit Rieder on the head with the bottle.

Rieder testified that he interacted with Jane Doe as part of a group, and he described her as liking him platonically.  He consumed seven to nine drinks over the course of the night.  As the party ended, Rieder decided to go to sleep.  He had intended to sleep on the futon, where he found Jane Doe.  Tired, and lacking other options for a place to sleep, he laid down on the futon.  He testified that he planned to go to sleep and did not have anything sexual in mind when he laid down on the futon.  Jane Doe did not react immediately, so Rieder thought she was maybe asleep.  Reider testified that, shortly thereafter, Jane Doe

---

[1] We provide only a brief summary of the evidence introduced at trial because a more detailed summary is unnecessary to our disposition.

pressed back into him and the two engaged in consensual sexual touching, including taking Jane Doe's pants off and Rieder orally copulating Jane Doe. Rieder testified that he knew Jane Doe was awake during the encounter, although neither of them spoke. He touched Jane Doe's vagina and her anus, and he thought everything was fine until she yelled and slapped him. Rieder also called three character witnesses in his defense.

The prosecution introduced videos of Rieder's police interviews from the scene of the incident on the morning of February 18, 2019, and from the police station later that day. Portions of Rieder's statements to police conflicted with his trial testimony.

The jury found Rieder not guilty of the oral copulation charge, but guilty of the lesser included misdemeanor offenses of simple assault and battery. The jury also found Rieder guilty of sexual penetration by a foreign object of an unconscious person. The trial court imposed the midterm sentence of six years. Rieder timely appealed.

## DISCUSSION

### I. Governing Law

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally

3

unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*People v. Hill* (1998) 17 Cal.4th 800, 819.)

" ' " '[A] prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.] It is also clear that counsel during summation may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature.' " ' " (*People v. Hill*, *supra*, 17 Cal.4th at p. 819.) "Prosecutors, however, are held to an elevated standard of conduct." (*Ibid.*) "A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state." (*Id.* at p. 820.)

" '[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements.' " (*People v. Hill*, *supra*, 17 Cal.4th at p. 829.) The prosecution may comment on the state of the evidence. (*People v. Weaver* (2012) 53 Cal.4th 1056, 1077.) "A distinction clearly exists[, however] between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove

4

his or her innocence." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1340.)

"To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved of on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Here, the parties agree that Rieder forfeited his claim of prosecutorial misconduct by failing to object and failing to request a jury admonition. (*People v. Hill*, *supra*, 17 Cal.4th at p. 820.) The parties disagree about whether we should nonetheless review Rieder's forfeited claim on the merits or treat it as a claim that his counsel was ineffective for failing to object to the alleged misconduct, but we need not resolve this disagreement. Because there was no prosecutorial misconduct, it does not matter whether we address Rieder's claim as one of prosecutorial misconduct or one of ineffective assistance of counsel. (See *People v. Sanchez* (2019) 38 Cal.App.5th 907, 915–918 [a finding of no prosecutorial misconduct disposed of ineffective assistance of counsel claim].)

## II.   Additional Background

Before closing arguments, the trial court gave the standard jury instructions on reasonable doubt (CALCRIM No. 220),

5

circumstantial evidence (CALCRIM No. 224), and adherence to the law as explained by the court (CALCRIM No. 200). Immediately before the prosecutor began his closing argument, the trial court reiterated to the jury that the prosecutor bore the burden of proof.

During his initial closing argument, the prosecutor argued that credible evidence established that Rieder knew that Jane Doe was unconscious — namely Jane Doe's testimony — and the prosecutor highlighted that Jane Doe had no motive to lie. He pointed out that Rieder, on the other hand, had given inconsistent statements and lacked credibility. The prosecutor conceded that the oral copulation charge was a "tough call" given that it was based on Rieder's testimony alone, but he argued the jury should have "absolutely no doubt" about the sexual penetration charge given the "overwhelming" evidence for that charge.

The prosecutor concluded, "So with all that overwhelming evidence, you have to be asking yourself, what is his defense? Honestly, who knows? I would guess he probably would come up here and say, 'Well, it was all consensual. It was all above board. She was conscious during this whole thing.' [¶] Well, if that's the case, then they better be able to explain to you why Jane Doe would come and take the stand throughout this entire process and lie about the story and fabricate it all. [¶] I hope they are able to explain to you that if this was always a consensual encounter, and he always knew that she was awake, she was clearly awake; giving three wildly inconsistent stories. If they

6

have a defense, those questions should be answered for you. So, on behalf of the People of the state of California, and on behalf of Jane Doe, because we have proven this case beyond any reasonable doubt, I am asking that you return the only verdict that is supported by the evidence and the only verdict that is supported by justice. I'm asking you to find the defendant guilty as charged. Thank you."

During his closing argument, defense counsel conceded that the main factual dispute was whether Jane Doe was asleep during the encounter. Counsel attempted to attack Jane Doe's credibility and character, arguing that it would be unusual for her to have slept through Rieder removing her pants and it was implausible that she slept through the oral copulation.

After arguing why Jane Doe should not be believed, defense counsel urged the jury to believe Rieder's character witnesses. Defense counsel discussed the elements of the crimes and the mistake of fact instruction, emphasizing that mistake of fact required a not guilty finding if jurors had "a reasonable doubt" about whether Reider believed that Jane Doe was able to resist because she was conscious. Finally, defense counsel discussed the prosecutor's burden of proof and what constitutes proof beyond a reasonable doubt.

In rebuttal, the prosecutor argued there was no doubt about what happened on the morning of February 18, 2019. The prosecutor then discussed what constitutes proof beyond a reasonable doubt:

"But this case doesn't require proof beyond no doubt. It doesn't even require proof beyond imaginary doubt. It doesn't even require proof beyond a possible doubt. It requires proof beyond reasonable doubt.

"Now, when defense attorneys talk about proof beyond a reasonable doubt, they start telling you about civil cases, and money, and people's kids being taken away. They talk about people being committed into mental hospitals. Making reasonable doubt seem like it's this unicorn that no one ever sees.

"But, the truth of the matter, juries all across this country, every day, use that standard. And people are being convicted of [*sic*] every day because it's just not really that complicated. Proof beyond a reasonable doubt means exactly what say [*sic*] words say. If you have any doubt that the defendant is guilty of these charges, that doubt has to be reasonable. What does it mean to be reasonable? It means to be based upon logic. It has to make sense. It has to be based upon facts.

"So, proof not beyond a reasonable doubt is a pretty simple process. First, you ask yourself[,] 'Do I have any doubt of the defendant's guilt?' If the answer is 'No' you convict. He is guilty. Maybe you do have some doubt because none of these cases are perfect. We don't always have every single piece of evidence. None of us were there that night witnessing it first hand. So, let's say I do have some doubt. You have to ask yourself, is the doubt that I have reasonable? Is it a doubt based on logic? Is it a doubt that is based on facts? Is it a doubt that a reasonable person would entertain?"

Defense counsel objected to the prosecutor's argument as a misstatement of the law. After a sidebar discussion with the court, the prosecutor continued, "So ask yourself, is my doubt reasonable? Can I articulate it? Can I explain to my fellow juror what my doubt is based upon facts? And I have to tell you, the doubt that the defense is trying to sell you, the doubt that they want you to believe is just not reasonable." The prosecutor also told the jury that he wanted to make "very clear" that Rieder had no obligation to call any witnesses.

## III. Analysis

Rieder argues that the prosecutor committed misconduct by misstating the law and shifting the burden of proof to him. We reject his assertions of error.

Rieder first unconvincingly contends that, by making the following italicized comments, the prosecutor argued that Rieder "had a duty or burden to prove his innocence by proving he believed Jane [Doe] was awake." "So with all that overwhelming evidence, you have to be asking yourself, what is his defense? Honestly, who knows? I would guess he probably would come up here and say, 'Well, it was all consensual. It was all above board. She was conscious during this whole thing.' [¶] Well, if that's the case, *then they better be able to explain* to you why Jane Doe would come and take the stand throughout this entire process and lie about the story and fabricate it all. [¶] *I hope they are able to explain to you* that if this was always a consensual encounter, and he always knew that she was awake, she was clearly awake;

giving three wildly inconsistent stories.  If they have a defense, those questions should be answered for you." (Italics added.)

Here, *People v. Weaver*, *supra*, 53 Cal.4th at page 1056, is instructive.  In *People v. Weaver*, the prosecutor stated the following in closing argument in a court trial:  "[A]s I sat here listening to counsel, I kept waiting.  I kept waiting.  I kept waiting for the answer that I think the court was probably waiting for from the defense, and that was, well, if it wasn't [defendant], just who the heck was it?  Who was it?" (*Id.* at p. 1076.)  The defendant did not object.  (*Ibid.*)  Later, the prosecutor stated, "Your honor, I think it is clear from the evidence in this case that [defendant] executed [the victim].  I don't think there is any doubt.  And again I kept waiting for [defense counsel] to offer this court some alternative, some — I suppose we just have this some other third person who committed this crime.  The court has been offered absolutely no alternative, nor could they offer —" (*Ibid.*)  The defendant objected that the prosecution had shifted the burden of proof, and the court overruled the objection.  (*Ibid.*)

Our Supreme Court held that the prosecutor had not impermissibly shifted the burden of proof.  (*People v. Weaver*, *supra*, 53 Cal.4th at p. 1077.)  "[The prosecutor] did not say that defendant bore the burden of proof or that defendant was required to produce evidence.  He merely said he was waiting for defense counsel to explain, in light of the evidence, how someone other than defendant could have murdered the victim." (*Ibid.*)  "It was not misconduct to observe that defense counsel had failed

10

to explain how this evidence could be reconciled with the conclusion that anyone other than defendant had committed the charged offenses. The prosecutor permissibly commented on the state of the evidence." (*Ibid.;* see also *People v. Hall* (1892) 94 Cal. 595, 599–600 [prosecutor's comment that defense had not explained facts and circumstances of case "on any other reasonable theory than that of guilt" "simply challenged [defense] counsel to explain the facts proved, and give his version of the offense" and was not improper], revd. on other grounds in *People v. Spriggs* (1964) 60 Cal.2d 868, 875.)

In this case, the prosecutor did not state or imply that Rieder had the burden of proving that he knew that Jane Doe was awake. Instead, after defense counsel's argument in his opening statement that the encounter was consensual and Rieder's similar testimony, the prosecutor commented on defense counsel's inability to "explain" why Jane Doe would lie or why Rieder's stories were inconsistent. In doing so, like in *People v. Weaver*, *supra*, 53 Cal.4th at page 1056, the prosecutor fairly commented on the state of the evidence and challenged defense counsel to explain how the facts proven before the jury did not lead to a conclusion that Rieder was guilty of the charged offenses. The jury likely understood these comments to mean that Rieder's theory that the encounter was consensual was unconvincing; it is thus not reasonably likely that the jury understood them as shifting the burden to Rieder to prove his innocence of the charges.

11

Rieder next contends that the following query in rebuttal closing argument constituted misconduct: "Is it a doubt that a reasonable person would entertain?" Rieder claims — unconvincingly — that the prosecutor misstated the law with this comment by conveying that reasonable doubt was only an objective standard.

In *Victor v. Nebraska* (1994) 511 U.S. 1, 5 (*Victor*), the United States Supreme Court considered the constitutionality of two jury instructions defining "reasonable doubt." In doing so, the high court endorsed a definition of reasonable doubt phrased in terms of "a doubt that would cause a reasonable person to hesitate to act," describing it as a definition the high court had "repeatedly approved."[2] (*Id.* at p. 20.) The high court explained that this "hesitate to act standard" gives a "commonsense benchmark" for just how substantial a doubt the juror must harbor to have reasonable doubt. (*Ibid.*)

Here, considering *Victor* and the record, there was no error in the prosecution's partial characterization of "reasonable doubt" as "a doubt that a reasonable person would entertain." The prosecutor did not argue that "reasonable doubt" was solely an objective standard. Instead, the prosecutor first explained that the "reasonable doubt" inquiry looked at whether the jurors

---

[2] The relevant portion of the instruction approved in *Victor* said that reasonable doubt " 'is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon.' " (*Victor*, *supra*, 511 U.S. at p. 18.)

subjectively harbored doubt about Rieder's guilt. The prosecutor then attempted to explain the type of doubt that the jurors must harbor, asking whether the doubt was based on "logic" or "ma[d]e sense," and concluding with, "Is it a doubt that a reasonable person would entertain?" In doing so, the prosecutor gave a benchmark for the degree of doubt that a juror must harbor using a "reasonable person" definition similar to the benchmark approved in *Victor*. And after doing so, the prosecutor stressed that jurors *must ask themselves*, "[I]s *my doubt* reasonable?" (Italics added.) The prosecutor did not commit the misconduct that Rieder attributes to him.

Relying on *People v. Centeno* (2014) 60 Cal.4th 659, Rieder also suggests that the prosecutor mischaracterized the reasonable doubt standard by implying that it could be satisfied by a reasonable account of the evidence. *Centeno* is distinguishable. There, in addition to improperly analogizing "reasonable doubt" to a diagram depicting an outline of California with incomplete and inaccurate descriptions (*id.* at pp. 665–666, fn. 4), the prosecutor argued that the People's burden of proof was met if the People's theory was "reasonable" in light of the facts supporting it. (*Id.* at p. 664.) "[The prosecutor] repeatedly suggested that the jury could *find defendant guilty* based on a 'reasonable' account of the evidence." (*Id.* at p. 673.) In contrast, here the challenged remark consisted of an explanation of the type of doubt that jurors must harbor to conclude that the People had not proven their case beyond a reasonable doubt. We agree with the People that the statements were not, and would not

13

reasonably be construed as, an argument that "the reasonable doubt standard can be satisfied by a reasonable interpretation of the evidence."

## DISPOSITION

The judgment is affirmed.

BROWN, P. J.

WE CONCUR:

GOLDMAN, J.
SIMONDS, J.*

*People v. Rieder* (A166121)

---

* Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.